UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PILAR KNIGHT, | ) | Case No.: 1:21-cv-0208 JLT |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S REQUEST |
| | ) | FOR JUDICIAL REVIEW (DOCS. 14, 18) AND |
| v. | ) | DENYING DEFENDANT'S REQUEST TO HAVE |
| | ) | THE ADMINISTRATIVE DECISION AFFIRMED |
| | ) | (DOC. 17) |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | ORDER REMANDING THE ACTION PURSUANT |
| Acting Commissioner of Social Security, | ) | TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| | ) | |
| Defendant. | ) | ORDER DIRECTING ENTRY OF JUDGMENT |
| | ) | IN FAVOR OF PLAINTIFF PILAR KNIGHT AND |
| | ) | AGAINST DEFENDANT KILOLO KIJAKAZI, |
| | ) | ACTING COMMISSIONER OF SOCIAL |
| | ) | SECURITY |

Pilar Knight asserts she is entitled to a period of disability and disability benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating her subjective statements concerning the severity of her symptoms. (*See generally* Docs. 14, 18.) The Commissioner seeks to have the decision affirmed. (Doc. 17.) Because the ALJ failed to identify legally sufficient reasons to reject Plaintiff's testimony, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] The action was originally filed against Andrew M. Saul in his capacity as the Commissioner of Social Security. (*See* Doc. 1 at 1.) The Court has substituted Kilolo Kijakazi, who has since been appointed the Acing Commissioner of Social Security, as the defendant. *See* Fed. R. Civ. P. 25(d).

## BACKGROUND

In November 2016, Plaintiff completed an initial claim for benefits. (Doc. 11-2 at 83.) She alleged disability beginning in May 2016 due to osteoarthritis, lower back arthritis, stress, migraines, hidradenitis suppurativa, headaches, sleep apnea, torn Achilles tendon, an enlarged heart, Basal arthritis in both hands, and carpal tunnel. (*Id.* at 83-84.) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*See generally id.* at 83-102.) Plaintiff requested a hearing and testified before an ALJ on January 18, 2019. (*Id.* at 23, 105.) The ALJ found Plaintiff was not disabled and issued an order denying benefits on July 3, 2019. (*Id.* at 105-113.) The Appeals Council denied Plaintiff's request for review on April 27, 2020. (*Id.* at 7-9.) Thus, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of May 15, 2016. (Doc. 11-2 at 107.) Second, the ALJ found Plaintiff had the following severe impairments: "calcaneal spurs in the left ankle, left Achilles tendinitis, posterior tibial tendinitis in the right foot, arthritis in the right ankle, status post-bilateral joint interpositional tendon arthroplasty, primary osteoarthritis in both first carpometacarpal joints, status post-carpal tunnel release, plantar fasciitis in the left foot, lumbar degenerative disc disease, and morbid obesity." (*Id.* at 108.)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 11-2 at 109.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, knee[l], and crouch, but never crawl. She could frequently handle and finger. She

could occasionally push and pull with the lower extremities. She could occasionally work around moving machinery, but never work at exposed heights. She must avoid more than occasional exposure to temperature extremes, wetness, high humidity, and atmospheric irritants, such as dusts, odors, gases and fumes.

(*Id.* at 109-110.) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing past relevant work as a sales supervisor and customer service representative." (*Id.* at 112.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from May 15, 2016, through the date of the decision. (*Id.*)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ in evaluating her statements concerning the severity of her symptoms and "ailed to provide specific, clear and convincing reasons for discounting Plaintiff's allegations of pain and upper extremity dysfunction. (Doc. 14 at 7, emphasis omitted.) On the other hand, the Commissioner asserts that "the ALJ properly weighed Plaintiff's subjective complaints of disability against the record, including her daily living activities, and accounted for Plaintiff's complaints by restricting her to a reduced range of light work." (Doc. 17 at 14.)

**A.     Plaintiff's "Function Report"**

On December 3, 2016, Plaintiff completed a "Function Report- Adult" form, addressing how her conditions limited her activities. (Doc. 11-2 at 224-232.) Plaintiff reported that "[b]oth of [her] hands hurt a lot, mainly [her] thumbs." (*Id.* at 224.) According to Plaintiff, she had "no cartiledge (sic) in thumbs," which would "lock[] up sometimes with the bone on bone." (*Id.*)

She stated she had "almost no strength in [her] hands," and it was "almost impossible to type, grasp something or even write." (Doc. 11-2 at 224.) Plaintiff indicated she could not "flip pages or pick things up sometimes." (*Id.*) She also reported difficulty opening a car door, opening jars, holding utensils, clapping her hands, stirring things, folding clothes, pushing items, fastening a seat belt, writing in cursive, cooking, cleaning her house, sweeping, and driving without pain. (*Id.* at 225.) Further, Plaintiff reported she had difficulty dressing, particularly with zippers and bra hooks, though she also had pain with putting on shoes and socks. (*Id.*)

Plaintiff described her typical day as follows: "make a cup of coffee, take meds, massage hands, put on hand braces if in a lot of pain, eat [and] try to do everyday chores[;] very limited everything I do

hurts. Watch TV[,] eat lunch, eat dinner. Sometimes run errands. Watch more TV." (Doc. 11-2 at 225.) She noted that she did not have to take care of any people, but helped with her daughter's dog "when it's needed," such as by putting out dry food and opening the back door to let the dog out. (*Id.*) She reported she could cook "easy stuff" such as soup and sandwiches, but her grown children would "cook for [her] too," adding "stirring is a problem." (*Id.* at 226.) In addition, Plaintiff said she could not chop or peel foods, or "pick up a pot or skillet." (*Id.*) Plaintiff noted she could vacuum, wipe countertops, dust, and water plants, stating "it still hurts but I do it anyway." (*Id.*) She reported she went to the gym and used a treadmill and bike but could not use machines that required her hands. (*Id.* at 228.) Plaintiff estimated she could walk about a mile before she needed to rest about ten minutes. (*Id.* at 229.)

She noted she would drive a car sometimes, "[b]ut not often." (Doc. 11-2 at 227.) Plaintiff explained it "hurt[] to turn [the] steering wheel" and she did not feel safe, or confident that if she had "to do something suddenly" that she would be able to. (*Id.*) Plaintiff reported that if she had to do "a lot of hand activity," then her daughter would accompany her when she went places. (*Id.* at 228.)

Plaintiff reported she did not handle stress well, and would get physical symptoms that included a rash, headache, and lack of sleep. (Doc. 11-2 at 230.) However, Plaintiff believed she was "ok" with changes in routine "most of the time." (*Id.*) She reported she had "weird dreams," which she attributed to her pain medication. (*Id.* at 230-231.)

**B.  Plaintiff's hearing testimony**

Plaintiff testified before an ALJ on January 18, 2019. (Doc. 11-2 at 23.) She reported that she had difficulty with her hands, plantar fasciitis, Achilles tendon issues, vertigo, and obesity. (*Id.* at 39, 50, 62.)

She reported that in 2015, she saw a neurologist and a hand/spine surgical specialist who diagnosed the problems with her hands. (*Id.* at 39.) Plaintiff stated she had surgery on both hands, which involved splitting a tendon from her forearm to "put it in to be a cushion in [her] thumb." (*Id.* at 44.) She explained that the tendon was placed "in there as cartilage" in each of her thumbs. (*Id.*) Plaintiff reported the surgery was done on the left hand in August 2016 and the right hand in August 2017. (*Id.* at 43, 45.) In addition, Plaintiff said she had a carpal tunnel release performed the same time

as the tendon surgery on her right hand.  (*Id.* at 45.)

She believed "[s]urgery was helpful as far as the pain that [she] was dealing with, because it was a totally different pain that [she] had prior to [the] surgery."  (Doc. 11-2 at 55.)  She explained that prior to the surgery, her left hand "was locking up and it was doing all kind of things, but it was very painful."  (*Id.*)  After the procedure, her hand were "weak and painful, but a different type of pain."  (*Id.*)  Plaintiff said she developed "a throbbing and a stabbing pain that comes out of nowhere," and sometimes her "hand lock[ed] up."  (*Id.*)  Because the left hand surgery helped—despite the change in pain—Plaintiff explained she decided to get her right hand done because it was her dominant hand.  (*Id.* at 56.)  She reported that she asked the surgeon about her pain following the procedures, and the doctor told Plaintiff it was new pain, "coming from after the surgery, not actually what he did."  (*Id.*)

Plaintiff stated she sometimes wore wrist braces after the procedures, which helped her hands be immobilized and not "hurt as much," though the braces were prescribed prior to surgery.  (Doc. 11-2 at 46-47.)  In addition, Plaintiff said she used a brace for Achilles tendon pain "[o]ff and on, just when the pain gets pretty bad," and she anticipated having "to do some standing and walking."  (*Id.* at 50.)

She reported that she was working on a cookbook project, preserving all her recipes in one place for her children.  (Doc. 11-2 at 48.)  However, Plaintiff said she was not able to type the recipes and "that didn't work too well."  (*Id.*)  Plaintiff stated she planted a yearly garden with her daughter, which included tomatoes, strawberries, eggplants, watermelons, cucumbers, and zucchini.  (*Id.* at 49.)  In addition, Plaintiff said she did "light cleaning" at home.  (*Id.* at 60.)

Plaintiff said she was able to dress herself and put on her shoes.  (Doc. 11-2 at 52.)  She stated using a knife to cut food was "hard," and she "usually ask[ed] for assistance with things like that." (*Id.* at 52-53.)  She reported she could use a fork, but did not "really cut with a fork and a knife, like steak or something like that."  (*Id.* at 53.)  Plaintiff explained "the holding of the knife," which needed to be gripped, caused pain and she avoided it.  (*Id.* at 54.)

She estimated that she could use her hands for "20 minutes before the pain or fatigue happens," and she had to stop using her hands for 20 or 30 minutes.  (Doc. 11-2 at 59.)  She reported she could carry a full dinner plate or a gallon of milk if she used both hands.  (*Id.* at 60.)  Plaintiff believed she could stand for "20 to 30 minutes" before she would feel pain in her ankle, back of her legs, or her

back.  (*Id.* at 60.)

Plaintiff reported she had a driver's license and would borrow her daughter's car "every once in a while."  (Doc. 11-2 at 64.)  She stated she drove to the market by herself two days prior to the hearing.  (*Id.* at 65.)  Although Plaintiff said she occasionally had difficulty with vertigo, she said she never experienced it while driving.  (*Id.*)

**C.    Standards for reviewing a claimant's statements**

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting his subjective complaints.  *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403).  Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004).

An ALJ may consider many factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians

concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

**D.     The ALJ's analysis**

The ALJ summarized Plaintiff's statements in her function report and determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 11-2 at 110.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*) Following this finding, the ALJ stated:

> The claimant's admitted activities show she is more capable than alleged. She is able to perform household chores, drive a car, shop in stores, workout at the gym, and even play sports, which are activities inconsistent with a disabling condition. The ability to drive show good grip strength, and the lack of the need for a cane or other assistive device shows an ability to effectively ambulate. The claimant's medical records also show she is more capable than alleged.

(*Id.*) Thus, the ALJ purported to reject Plaintiff's statements based upon her level of activity and conflicts with the medical record. (*Id.*) The ALJ then summarized the medical opinions in the record. (*See id.* at 111.)

Plaintiff argues the ALJ erred in evaluating her subjective complaints in this manner and "the ALJ's rational for discounting Plaintiff's allegations of hand pain and upper extremity dysfunction were not clear and convincing." (Doc. 14 at 11.) The Commissioner argues the ALJ "considered the objective and other evidence regarding Plaintiff's subjective hand pain and upper extremity limitations, and reasonably accounted for her subjective complaints by restricting Plaintiff to sedentary work with manipulative limitation." (Doc. 17 at 9.)

1.     Daily activities

A claimant's level of activity may be sufficient to support an ALJ's determination to give less weight to her subjective statements. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). For example, the Ninth Circuit determined the ability to cook, clean, do laundry and manage finances may be

sufficient to support an adverse finding of credibility. *See Stubbs-Danielson*, 539 F.3d at 1175. An ALJ may also conclude "the severity of … limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine*, 574 F.3d at 693. The Ninth Circuit explained, "Even where … activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Stubbs-Danielson v. Astrue*, 539 F.3d at 1175.

The ALJ observed that Plaintiff was "able to perform household chores, drive a car, shop in stores, workout at the gym, and even play sports," and opined these activities were "inconsistent with a disabling condition." (Doc. 11-2 at 110.) The ALJ also believed Plaintiff's "ability to drive" showed she had "good grip strength." (*Id.*) However, Plaintiff contends "the ALJ provided an incomplete account of her statements." (Doc. 14 at 8.) For example, Plaintiff contends "the ALJ disregarded Plaintiff's statement that she did not drive often because it hurt to turn the steering wheel, which made her feel unsafe." (*Id.*, citing AR 223 [Doc. 11-2 at 227].) In addition, Plaintiff notes the ALJ did not acknowledge her statements that chores were limited and painful, and she "can't do the machines at the gym that require [her] hands." (*Id.*, citing AR 222-24 [Doc. 11-2 at 226-228].)

As Plaintiff argues, the ALJ appears to mischaracterize Plaintiff's statements concerning her abilities and limitations with the use of her hands. The ALJ has not identified any statement by Plaintiff—whether in the Function Report, at the hearing, or to a medical professional— supporting his assertion that Plaintiff played sports. Indeed, under the section of "Hobbies and Interests" on the Function Report, where Plaintiff was asked whether she engaged in activities such as reading, watching TV, sewing, playing sports, etc.," Plaintiff reported going to the gym "for treadmill [and] bike" but did not identify any specific sports. (*See* Doc. 11-2 at 228.) Further, it is unclear how the identified workouts at a gym contradict her assertion that she is unable to use her hands for only 20 minutes before she needed to rest her hands. The ALJ did not explain how the ability to drive contradicts this testimony, or make any finding that Plaintiff drove for more than twenty minutes at a time, such that her level of activity exceeded the limitation to which she testified. Thus, the ALJ erred in rejecting Plaintiff's reported manipulative limitations based upon the identified activities.

The Ninth Circuit has determined that the mere fact a claimant engages in normal daily

activities "does not any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court explained, "One does not need to be 'utterly incapacitated' in order to be disabled." *Id*. (quoting *Fair*, 885 F.2d at 603). Here, the ALJ also failed to find Plaintiff's limited activities could be transferred to a work setting, or state Plaintiff spent a "substantial" part of her day engaged in such activities. Consequently, Plaintiff's activities of daily living did not constitute clear and convincing evidence to discount her subjective statements concerning the severity of her pain. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (the ALJ erred in failing to find the daily activities "meet the threshold for transferable work skills"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

### 2. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider").

If an ALJ cites the medical evidence to support the decision to reject subjective statements, it is not sufficient for the ALJ to simply state the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The Ninth Circuit explained that "summariz[ing] the medical evidence supporting [the] RFC

determination ... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 WL 4138577 at *13 (E.D. Cal. Aug. 3, 2016). For example, in *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id*., 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible, and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

In *Holcomb v. Saul,* the Ninth Circuit determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking the testimony and medical evidence. *Id.*, 832 Fed. App'x. 505, 506 (9th Cir. Dec. 28, 2020). The Court noted the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The Court observed that "the ALJ discussed relevant medical evidence but failed to Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Further, the Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id*. (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, the ALJ offered little more than a summary of the medical evidence at step two, explaining the findings regarding the severity of Plaintiff's impairments. (Doc. 11-2 at 107-109.) In addressing Plaintiff's subjective complaints, the ALJ stated only: "The claimant's medical records also show she is more capable than alleged." (*Id.* at 111.) However, the ALJ did not link any objective

findings in the medical record to Plaintiff's statements in the Function Report or testimony at the administrative hearing. (*See id.*) Therefore, the ALJ's summary of the medical record does not support the decision to reject Plaintiff's subjective statements. *See Brown-Hunter*, 806 F.3d at 494; *see also Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where "the ALJ simply cite[d] to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").

### 3. Failure to identify testimony being rejected

The ALJ must identify the portions of the claimant's testimony that is not credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings" regarding credibility, such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (the ALJ must "specifically identify[] what testimony is not credible and what evidence undermines the claimant's complaints").

The ALJ did not discuss Plaintiff's statements at the administrative hearing, including her report that she may only use her hands for 20 minutes at a time before she needed to rest them for 20 to 30 minutes. (*See* Doc. 11-2 at 110.) Instead, the ALJ appears to have focused only upon Plaintiff's statements made in the Function Report in 2016. (*Id.*) Because the ALJ did not carry the burden to identify specific statements rejected or the evidence undermining the limitations to which Plaintiff testified, the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

### E. Remand is appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative

agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit also explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony may be credited as true, and remand is not appropriate. *Lester,* 81 F.3d at 834*; Smolen,* 80 F.3d at 1292.

Courts retain flexibility to remand the matter for a determination as to whether testimony should be credited as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints…"). Accordingly, remand is appropriate for the ALJ to provide sufficient findings concerning Plaintiff's subjective complaints and the limitations Plaintiff identified in her testimony.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the record and Plaintiff's subjective complaints, and the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. Plaintiff's request for review of the ALJ's decision (Docs. 14, 18) is **GRANTED**;
2. The Commissioner's request that the decision be affirmed (Doc. 17) is **DENIED**;

3. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

4. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Pilar Knight and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **December 28, 2021**            _ **/s/ Jennifer L. Thurston**
                                       CHIEF UNITED STATES MAGISTRATE JUDGE